The next case, number 22-1742, Natasha Grace et al. v. Board of Trustees, Brooke East Boston et al. At this time, would counsel for the appellant please introduce yourself on the record so you can begin. May it please the Court, my name is Estina Barlow and I represent the plaintiff's appellants in this case. Could I please reserve two minutes of my time for rebuttal? Okay, you may. Beginning in December of MG's fifth grade year, administrators at Brooke East Boston knew that he was being relentlessly harassed by other students because they believed he was gay or transgender. Yet school officials did nothing for at least 10 months and otherwise exhibited deliberate indifference to the discrimination. A jury could find that the school's response was clearly unreasonable in light of the known circumstances for two principal reasons. First, this was a systemic problem, but Brooke failed to treat it that way. Administrators did nothing to remedy the underlying harassment for at least 10 months. They never investigated the discrimination. And any school-wide measures that Brooke may have taken I'm sorry, when do you start the running of the 10 months? What date do you have in mind generally? In December of MG's fifth grade year, the officials were on notice because of the bus incident and the other things that happened at that time. Including the Gracefully Grayson book incident also? That's right. So the bus incident and the Gracefully Grayson incident and Ms. Grace's email to Director Clark were all right at the same time at the end of November or early December in MG's fifth grade year. Okay. I want to start by talking about the dramatic mismatch between the scope of the problem and the school's response. As mentioned, this was a systemic problem. Although it began from a single source, MV, by the time administrators learned about the harassment, it was in the water. The record makes clear that this wasn't a random, unconnected set of instances of childish cruelty. They comprised a pervasive pattern of sex-based abuse. Yet despite that reality Counsel, does it really matter to your case whether it is systemic or a series of events perpetrated by different people, including a bus monitor, including a teacher, in order for a jury to conclude that the responses were ineffective? I don't think it's critical to our case. I think a jury could either conclude that the failure to meet a systemic problem with a systemic response exhibited deliberate indifference or that the individualized reactions, the ad hoc reactions by the school, to each instance that it did react to were all clearly unreasonable in their own right. You know, it's a bit difficult to define systemic where you're talking about an elementary school population with a bunch of different kids. And it would be helpful if you could describe the particular incidents and the particular actors. I've outlined three of them. I think maybe you have more of them. But could you describe the individual events you are relying on going forward in time from that December date? Of course. So we're relying both on the conduct by MV. That's kind of the ringleader of the bullies who's described as attacking MG starting in fourth grade. There is also repeated references in MG's therapist notes to other students who were calling him names, who were making fun of him, who were body checking him on the playground and so forth. And while I don't have specific names of those students for you today, it's very clear both from the notice provided to the officials in December of fifth grade as well as the subsequent notes that there were multiple students, many students involved in the harassment. What do you mean by many? Can you put a number on it? The record doesn't support a number. But at this stage in the proceedings, it's fair to infer given MG's reaction to the harassment and the fact that it was described as children, as boys and girls, as school children, that it was coming at him from all directions. We also know that the harassment was widespread enough that it floated up to the teachers and to the administrators, which is further evidence that a lot of children were involved in the harassment. Okay. Could you address your same argument? Remember, you're in the summary judgment context. So in order for the case to go to trial, there have to be genuine issues of material facts. But could you point one or two of these genuine issues that are up there in the open that warrant a trial? The primary issue we take with the district court granting summary judgment is that it relied on these so-called investigations as being a reasonable response to the harassment. So the district court didn't say anything about whether genuine disputes of fact preclude summary judgment on the existence of sex-based pervasive and severe harassment. It just relied on deliberate indifference. So I can talk a little bit about why I think the record creates genuine disputes of fact with respect to the reasonableness of those. So if we look at the summer camp incident, for example, where a student says that she... Well, MD comes to Ms. Dudley about a month after school starts and says that another student has called him gay. And Ms. Dudley follows up with that student, and she says that she said this at summer camp. Ms. Dudley then, we can infer from the record, didn't ask any follow-up questions. She didn't ask, Who did you hear that from? She didn't ask, Who are you telling this to? She didn't ask, Who's talking about this? Or do any investigation to get to the systemic nature of the harassment and the other students involved. And the reason that that's clearly unreasonable is because the jury could infer that Ms. Dudley would have known that the harassment not just happened at summer camp but spilled over into school. That's true because... Wasn't the summer camp before the school had notice? It was not, Your Honor. It was in the summer between fifth and sixth grade. So the school was on notice in December of fifth grade, and this happened just before school started in sixth grade. So Ms. Dudley already knew that there was this background pattern of harassment. We can also, if you look at page 651 of the joint appendix, her deposition is inconclusive about whether or not she knew that it had spilled over into school. And it's also a fair inference that when MG brought this to her attention a full month after school had started, that he would have told her that the reason he was complaining about this incident was not because something had happened a long time ago and was still hurting his feelings, but was because it was ongoing and it was continuing the same way that it had in the prior year. The other thing that I want to... Could you... I referred to both the bus monitor incident and the teacher putting a book on his desk in full view of all of the other students. Could you describe those a bit more and what inferences you think a jury could draw from those two incidents? Of course. So beginning with the bus incident, what the evidence shows happened there is that MG was on the bus and Ms. Reed asked another student whether she liked him, and she said she didn't like MG because the whole school thought he was loud and gay. And then Ms. Reed turned to MG and said that he needed to watch his flamboyant hands, watch the way he moved his hands and the way he talks. And then Ms. Dudley was told about this event and asked the parties what happened, and they confirmed these events. But then she took no further action with respect to the student, either in the form of education or in the form of punishment. And that inaction would have effectively endorsed the student's view that it was appropriate to dislike MG because he was gay. My time has expired. I would like to reserve some time for... Judge Lynch had also asked... You're going to have your two minutes for both, but Judge Lynch also asked you about the book incident, the Gracefully Grayson. Could you address that also in the context of her same question? Of course. So Gracefully Grayson is particularly useful for notice in our view, both because in describing those events, it's clear that MG was meeting with Ms. Dudley about the fact that other students were teasing him about his sexuality. He then went back to class late, and Ms. Nissan asked him why he'd missed class, and he explained to her what was happening. He seemed down, and then she gives him this book, leaves it on his desk in full view of the other students. There's a genuine dispute of fact on that point, but the therapist notes in both MG and Ms. Grace's deposition support that it was in view of all of the other students. And that really exacerbated MG's experiences and fed into the harassment that he'd suffered. What did the school system do in response to what this teacher did? They did nothing. Mr. Clark confirms that the school had no response to what Ms. Nissan did other than just ascertaining what had happened. They believed that it was an appropriate step for her to take, but they didn't do anything at that point to find out more about the underlying harassment, about the fact that other students were tormenting him, and that it was ongoing. As I understood your client's statements, he denied that he was gay, and yet the teacher puts a book on his desk which suggests that he is gay. You earlier articulated that he was gay. I'm a little confused about whether we're talking about a perception that he's effeminate, therefore gay, or whether there's an admission that he was gay and was harassed on that basis. If I said earlier that he was gay, then I misspoke the record. Our claim is based on this other student's perception of him as either being gay or transgender, and the book is extremely strong evidence that that was in fact a perception that the other students held. And apparently the teacher. That's right, yes. And what, I'm sorry, how did the school system characterize what the teacher did? They thought it was appropriate or inappropriate? I believe the direct quote was that maybe she, not this part's not the direct quote, they said maybe she shouldn't have given him the book in full view, maybe she should have spoken to, I'm sorry, I've misstated that. They said maybe she should have spoken to his mother first, but that ultimately they didn't think that giving him the book came from a bad place. That was how the director described the events. And so no further action was warranted after that incident in their view. Okay, so the focus was on the teacher's motivation, which may have been well-meaning rather than the effect on him in light of everything else that had happened. Yes, and regardless of whether Ms. Nisan meant well by placing that book on his desk, our view is that that doesn't absolve the school of a responsibility to step in if it's contributing to a view among the students that constitutes sex discrimination. And overall what you're alleging is that this is not just one isolated incident, there's the bus incident, there's the bullying and everything, and if you look at the context of everything, that's where you get your genuine issue of tribal fact, correct? It's a hostile educational environment, yes. Okay. Before Judge Lynch asked that question, which took a little time to answer, you said you had one other thing to mention. If you have 30 seconds for that, or if you don't remember, you'll get rebuttal. I'm not sure exactly what I was referring to. You'll have rebuttal time. Judge Howard has one more question. Could you go back through one more time the bus incident? What I specifically want to know is whether there's something about the incident and its relation to Ms. Reed and her conduct that you think there is a material dispute of fact about that needs to get in front of a jury and the response to that by Ms. Dudley, or is this simply about notice? I think it's very helpful on notice, Your Honor, because Ms. Dudley would have known about the whole school thought he was gay comment and the widespread nature of the harassment. Okay. But beyond that, I think really to the response that Ms. Dudley undertook, my understanding is there was a conversation, or perhaps there was a conversation, with the bus monitor, but we don't know anything about that. Is there a dispute about what the conversation was about and whether the conversation itself was sufficient? There's certainly a dispute about whether any action was taken against Ms. Reed. So there's an allegation that there should have been action taken and was not? I think that if the school is tolerating this kind of behavior from teachers. I want to know what you want the jury to do about whether there's a dispute of fact about the response to the bus incident itself, or if that's just about notice. I think whether or not, however Ms. Reed had responded, I think that we can still proceed with our claim. The fact that the dispute that I would submit to the jury. Please, Ms. Farrell, answer the question. Factually, was there a response? Is there a dispute about whether there was? And is there a dispute about what the response was? It's undisputed no action was taken against the student. With respect to Ms. Reed, there is a genuine dispute about whether there was a response. The school denied disciplining Ms. Reed, and Ms. Dudley testified that she wasn't sure what had happened with Ms. Reed, but she believed a conversation was had. And we think that the contours of whatever that conversation are, are something that a jury could consider or would need to resolve in considering whether the school was taking MG's situation seriously and responding in a reasonable manner. And this came out at a deposition? Yes. And was there a follow-up question about, okay, what was the conversation? I don't believe so because the deponent, Ms. Dudley, hadn't been a part of the conversation. She was just relaying that she believed a conversation was had, so she wasn't privy to it. Was she asked who had the conversation? I believe she said that the conversation was carried out by the principal or the assistant principal because they were responsible for teacher discipline. And were they asked? I'm sorry? So at deposition, were they asked about the conversation? Neither of them was deposed. Okay. Okay, thank you. Thank you, counsel. At this time, would counsel for the athletes please introduce themselves on the record and begin. Good morning, Your Honors. John Clardy on behalf of the Brooke Charter School. We're here where the school was confronted with a child with behavioral problems, and the school was highly responsive. It was engaged and it was caring. In fact, the mother called the school a wonderful school, said it was academically great, and even after she withdrew this child, she sought to enroll her older child in the same school. Everything that was reported to the school, the school investigated. It investigated all known incidents. And what is actually going on here is the plaintiffs are suggesting there was all this unreported, unknown conduct taking place involving the minor child. Counsel, I'm sorry, but I don't believe that's quite right. There are claims of inadequate investigation, but your opponent has argued rather strongly that the school's responses, substantive responses, were not reasonably calculated to stop the harassment that was going on. Assume hypothetically that one could view this as creating an unwelcome atmosphere because of the perception that he was gay or transgender. Let's just adopt that as a background assumption. So the story that is told is not only of student harassment, but after the school is aware of it, of school officials, a bus monitor, and a teacher exacerbating the harassment rather than trying to remedy it. And your brief is really rather short on specifics about the involvement of the adults in this. So would you like to address that, please? Certainly, Your Honor. As to the only allegations involving adults here was the school bus monitor, Ms. Anita Reed, and her allegation is that on a bus trip in fifth grade, she inquired of a female student, why don't you like the plaintiff minor? Why is it significant it's a female student?  Because it's different than MV or any other person who is alleged to have been a harasser. That would tend to help the plaintiff, I would think, but go on. Okay, well, either way, the child told the school bus monitor, I don't like him because he's loud and gay. And the school bus monitor apparently, she was never deposed in this case, told the plaintiff to change his behavior. Now, there's a dispute as to whether there's any admissible evidence as to what she said to the child, because I took the child's deposition over the course of a full day, and he never mentioned this flamboyant hands comment or saying anything. The only evidence of that is the mother later claiming that that's what happened when she wasn't even present. But taking it even at its face value, that's not harassment, and that's not endorsing. I'm sorry, was there a reference to that in the therapist notes? The flamboyant hands comment, no, was not, to my knowledge, mentioned in the therapist notes. And we dispute, as you know, the admissibility of these therapist notes also for the reasons we set forth in our brief. Did you ask at deposition about the bus monitor incident? Yes, I inquired of the mother, Ms. Natasha Grace, and she testified that she wasn't there, she didn't hear it, she has no personal knowledge of it other than what she claims her son said to her. I'm sorry, I thought you said you deposed him. I deposed both the child over the course of a full day. Okay, did you ask the child? I asked the child in detail about every incident he claims he was subject to for harassing conduct. But did you ask him about the effeminate hand motions? I don't, yes, we asked about, he never mentioned, I can't remember the book and page, but it's kind of like an absence of testimony. It could have been he never mentioned it, but if you did not bring it up, he had perhaps no reason to, you know, you have to look at the context. Yeah, but he never submitted an affidavit either if he wanted to supplement his materials for summary judgment. Once we filed summary judgment saying that there was no evidence that this took place. So certainly if he was going to testify to that, I would expect by now a high school student would have said that. I mean, it was very narrow what he was alleging was sexually charged harassment here. This child was involved in peer conflict. There was tripping incidents, getting in line first, all this other stuff with MV had nothing to do with sexuality. There was no attribution that MV at any time he had any physical confrontation either in the playground or the hallway, was doing it simultaneously with any sexual connotation. This is later added on is what's going on here. The mother came in to meet with school officials because of the child's behavioral issues which would be coming out of hand. We had the outside therapist come in. We had our school psychologist present for that meeting, the dean of students present, the mother present, and they hashed out how are we going to address this child's behavioral problems. She had ample opportunity to complain about sexual harassment for what was going on. The mother never brought that to the school. She said I could call them any time. They are always responsive to me and always set up meetings. Counsel, okay, I thought it was pretty much undisputed that by December there had been notice to the school system of this complaint about an unwelcome hostile environment being created in response to the perception he was gay. No, Your Honor. You're saying that is disputed. It never happened and there's no evidence in the summary judgment record to that. The problem was the child having behavioral issues like getting in disputes in line or having playground conflict with M.V. and others. Never brought the result. Okay. There was one comment brought about someone called me gay in the course of talking about other behavioral issues and that was what resulted in Ms. Neeson hearing that again from a child. And she, in an act of consolation for the child, showed him this book, which is read by all of us. It's on the shelf in the book. It's approved throughout the district. It's widely read throughout the district. It had nothing to do with any attempt to harass. And, in fact, I asked... What is the book about, please? It's entitled Gracefully Grayson and it's about a young child who is coming to understand himself as being transgendered. Okay. And the student, the plaintiff here, is selected out of the whole class of students to be the one who gets this book put on his desk and he denies he's gay or transgender but he takes it as a sort of labeling by his own teacher. Well, let's talk about that, Judge. No, no. Let's talk about that because... Okay. That's why I'm raising it. He said no one in the class saw it. No other student saw it. I saw it on my desk. I put it under my desk. The only child who saw it was on the school bus ride home. I showed it to my friend and then put it away. The child never read the book. There was a sticky on the book that said, with a heart, saying in case you want to read it from the teacher. So this is... But when you're looking in the summary judgment context, if the teacher is giving him this book, it's only the plaintiff who's given the book. Right. That, to me, perhaps would create a genuine issue of fact because how does the teacher know he's perceived as basically transgender? She probably knows other things are going along and give him the book. Doesn't that create an issue? No, Your Honor. The record shows it was the child himself that told Ms. Nissan that I was called gay. And her response to this conversation with the child, a one-on-one conversation, was to leave a book that was part of the district approved reading list on his desk with a sticky note. What does that have to do with singling him out as the person to whom she gives the book in full view of the class? It doesn't matter whether it's approved by the school system. Because, one, it's not an inflammatory book, nor is it a harassing book. Two, it wasn't shown to him in full view of the course. Three, he wasn't singled out. It was a direct response to his inquiry to that particular teacher. It was a one-on-one interaction to which she responded by leaving him a book. I'm sorry. What was the inquiry? He told the teacher he had just been meeting with Ms. Dudley, and one of the things he mentioned they talked about was other students calling me gay or transgender. Yeah, and he was unhappy about that. So what is the request to be given a book about being gay? It's a consolation by a teacher in a one-on-one interaction with a child. She thought it might be helpful for him. This is a fifth-grade student, and as you probably know, the child's sexuality is not nearly identified. Who knows what the child's sexuality is? In fact, when I took his deposition when he was a high school student, he still didn't identify his sexuality one way or the other. So this was just the school teacher. It was not evidence of harassment by the teacher, nor is it evidence of deliberate indifference. If anything, it's responsiveness. It's an act of consolation by a teacher trying to help a child. So I see you're out of time. Let me just go back because our question really isn't to resolve those, but whether there's enough evidence here to get to a jury. You say that the child says, no other student saw that this book was being put on my desk, and would you talk about that a bit more? So that just goes to the fact that there's no evidence of a hostile, sufficiently severe and pervasive sexually hostile school environment. Contrary to his statements on his therapist record, he said under oath, none of the other students saw it and no one was pointing at me and laughing at me about this book. He put it under his desk and then he shared it with a student on the bus ride home. So it totally undercuts their claim. Deliberate indifference is a very stringent standard. We have to have actual knowledge of harassment. There is no evidence of any actual knowledge. The only thing we have is that gay comment there, the Skittles comment, which the child didn't even know what Skittles meant when Ms. Reed pointed it out to him and those students were disciplined. And then I think there was one more, oh yeah, the summer camp rumor, which we did investigate. And we did find that we couldn't take action because it occurred off school grounds and it wasn't within the control of the school at the time. Thank you. Thank you, Howard. Anything else? I know counsel had almost 20 minutes. If you want to have anything else, you want to add one more minute or two? Go ahead, if not. Judge, no, I just think I'd point to the court to the deliberate indifference standard and how high that is and that the school did take action. We did investigate. So state the standard as you know it. It has to be, thank you, Your Honor, for redirecting my attention to that. It has to be known, severe and pervasive, and it doesn't require, basically, it's kind of somewhat undefined. It has to be reasonableness essentially, but it's not required for protection. So is it reasonably calculated to address the problem or is it on the other end of the scale so wholly inadequate that it was unreasonable? See the distinction between the two? So what's the standard? Yes, Your Honor, I think it's one of reasonableness. It's got to be, it can't be, deliberate indifference means an unreasonable response. So the response would be unreasonable in the circumstances. But the case law cites, you know, it doesn't require perfection. It doesn't require that we could have done more. And even if the steps are ineffective, you know, there's that portal. Let me ask, Mike, do you think the standard is whether it was reasonably calculated to address the problem? I think deliberate indifference can arise even, you know, if we ignore a problem. You know what I mean? So it doesn't have to be that we're deliberately not reasonably calculated in response. It can be just we take no response at all, which might be unreasonable as well. But here that's not the case. It's not supported by the facts. Okay, thank you, counsel. Thank you. Ms. Barlow, you have two minutes for rebuttal. Just one note on the standard that you ended on. Davis articulates it as a response that's clearly unreasonable in light of the known circumstances. The reasonably calculated to end the harassment language comes from the Second Circuit's decision in Zeno. And I think it reflects the intuition that if there's no hope that a measure will actually target the underlying harassment, that that is not, that's a clearly unreasonable response on the part of the school. I also wanted to provide the court with some citations to the joint appendix, in case they're helpful on either gracefully Grayson or on actual notice. On page 821 in the therapist notes, which were taken contemporaneous to these events, MG has informed her that the other students did see the book and were pointing and laughing at him, and he felt like he wanted to die. And there's also aspects of both Ms. Grace's deposition and MG's deposition that suggests that they did, in fact, see the book in conflict with his statement that he put it away quickly. Those are at pages 452 and 620, and we discussed them in our brief. And that would create genuine issue of facts as well, correct? Exactly, yes. If the therapist notes are admissible evidence, and why, in your view, are they admissible evidence? In our view, they're admissible evidence because the out-of-court statements that MG is relaying to his therapist are not for their truth but for their effect on him. His statements to his therapist are statements for purposes of medical diagnosis or treatment, as are her recordings of his statements. And so they can come in under Rule 8034, the exception to the hearsay requirements. I know there are a number of other objections that the school raised to that evidence, so if there's a particular one that I can address, I'm happy to do so. What do you do with the assertion that when the child was questioned at deposition about this event, he did not say that other students saw it and that he was laughed at in response? He said, nobody else saw it, I quickly put it away. That's assertion one. Assertion two is at the deposition of the mother. She also did not say anything of that sort. I see my time has expired. Could I please answer the question? No, please finish. So as for his deposition at page 620, he says that Ms. Nissan giving the book to him confirmed what all of the other students thought about them, which made the harassment worse. And in our view, that creates a genuine dispute of fact vis-a-vis his own deposition about what happened. And then in Ms. Grace's deposition, she actually testifies that she believes other students did see the book because of the effect that it had on MG. And all of that together with the therapist notes creates a genuine dispute on the issue. Okay. Any other questions? Judge Lynch or Judge Howard? Okay. Thank you, Counsel. I just noticed from your brief that you and co-counsel are from the Georgetown Law Appellate Immersion Clinic. That's right. Okay. And I believe students helped you with the briefing, right? That's right, yes. Okay. Well, commend the students on the briefing. I'll do that. Thank you. Thank you very much. You're excused. Thank you.